CHARLES *v.* STATE.

4131                              133 S. W. 2d 26

Opinion delivered October 23, 1939.

*Jno. A. Hibbler,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

MEHAFFY, J. The appellant was tried and convicted of murder in the first degree. Motion for new trial was filed and overruled, and the case is here on appeal.

Appellant's first contention is that the verdict is contrary to the law and evidence, and states: "The test of the correctness of the verdict would be whether or not there was sufficient evidence to sustain a conviction if the confession was eliminated."

Section 4018 of Pope's Digest reads as follows: "A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such offense was committed."

It will, therefore, be seen that the test is not whether there was sufficient evidence to sustain a conviction, but whether there was evidence that such an offense was committed. In other words, before the confession can be introduced against the defendant, there must be evidence that the crime charged was committed by some-

one. The testimony in this case is undisputed that Fred Angeles was murdered by someone, and appellant says in his brief:

"It is true that the deceased, Fred Angeles, was killed by being beaten on the head with a blunt instrument which the state proved to have been a tire hammer."

Dr. Roberts testified that he found the body of Fred Angeles with numerous lacerations or cuts over his head and forehead, and blood was coming from his ears and nose. He was dead when witness arrived, and the body was still warm. There were gaping wounds in the hairy part of his head and forehead, measuring an inch and a half or two inches long. He was able to remove some of the skull. There were eleven distinct wounds on his head. It looked like the blows inflicted were of crushing force. He examined the instrument that the city detectives had, a small hammer. One edge was wedge shaped and the other was round. The wedge of the hammer fit into the cuts or lacerations. The hammer had red stains on it. He testified that the cause of the man's death was an acute brain injury and fractured skull.

Pheophilis Ferner and Charles Chambers testified that when on their way home they heard groaning in the ditch, they struck a match, saw the body, and called an ambulance. Ferner stayed with the body until Chambers got Mrs. James to call for an ambulance. The man was still breathing when the two young men arrived, but he quit moving when the ambulance came. They first called colored people who operated an ambulance, because they thought the man in the ditch was a colored person.

There was other evidence showing that Angeles was murdered. Witnesses found the hammer at appellant's employer's place of business. It was shown that it was the hammer used by appellant and others in their work. The hammer had bloodstains on it. Blood stains were also found on appellant's clothing.

The circuit judge, in the absence of the jury, heard the evidence as to appellant's confession. The appellant claimed that he was mistreated and threatened and that that is the reason he made the confession, and denied that he killed Mr. Angeles, or anybody else. But several witnesses testified that there were no promises, no threats, and that the confession was voluntarily made. He was finally taken to the prosecuting attorney's office and the deputy prosecuting attorney who was trying the case directed the officers to leave the room, and then when no one was present except the appellant and the deputy, appellant repeated his confession and said it was true. He does not claim that any threats were made in the deputy prosecuting attorney's office, or that anything was said by the deputy that induced him to make the statement.

It is admitted that appellant made the confession, or repeated it to the deputy prosecuting attorney, and that nothing was said or done to intimidate him—no threats made, and no promises made. The evidence is overwhelming that the confession was voluntarily made.

We recently said: "In many instances, where the accused is confronted with a confession which he cannot deny having made, he insists that it was not freely and voluntarily made. But that insistence does not render the confession inadmissible, where there is testimony to the effect that it was in fact, freely and voluntarily made. In such cases the practice approved by us, which was followed in the instant case, is for the court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and, if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made." *Brown* v. *State, ante* p. 920, 132 S. W. 2d 15; *Morrison* v. *State,* 191 Ark. 720, 87 S. W. 2d 50; *Davis* v. *State,* 182 Ark. 123, 30 S. W. 2d 830.

In the instant case the above rule was strictly followed by the circuit judge. After hearing all the evi-

dence in the absence of the jury, the court made the following ruling:

"All of this testimony is admissible, the court will hold that all of this is admissible, the court holds the questions and the incriminating admissions are voluntary. He will have the opportunity to testify before the jury whether or not they were voluntary, whether there were acts of physical violence used or threats or promises made to him, the jury will have the right to pass on that, the court is only passing on the admissibility of them."

Trial was then resumed in the presence of the jury, and the evidence before the jury showed that the confession was voluntarily made; that there were no promises, no threats, and no inducement to get appellant to make any statement; but his voluntary statement was reduced to writing and signed by him and sworn to before the clerk of the municipal court.

The appellant, himself, denied that the confession was voluntary, and denied that he killed Fred Angeles.

The court fully instructed the jury as to murder, and then told them that there had been some testimony regarding a confession and stated: "But before you can consider any confession as evidence, you must find: First, that he did make a confession; second, that the confession he did make was the one you heard on the witness stand; third, that when he told it he told the truth; fourth, that it was voluntarily made."

The court, continuing, said: "In order for a confession to be voluntary, you must find that it was made without hope of reward or fear of punishment."

He also told the jury that the presumption of law is that any confession made by a defendant when he is in the custody of officers, whether these officers be sheriffs, detectives, policemen, the prosecuting attorney or any other officer, is involuntary and incompetent, and cannot be considered by the jury. He stated that the effect of that presumption was to cast the burden of proof upon the state to prove by a preponderance of the testimony that the confession was voluntary. The state

must overcome this presumption to the satisfaction of the jury, and show that the confession was voluntary.

The court then, at some length, instructed the jury and said that the law presumed any confession or statement involuntary, if made when he was in the custody of officers and under their influence; and stated that the confession must not only be voluntary, but freely made. *Austin* v. *State*, 193 Ark. 833, 103 S. W. 2d 56.

Appellant contends that the court erred in refusing to set aside the verdict, because it was found that Robert Andrews, one of the jurors, was an alien, and a subject of Great Britain. The appellant had the opportunity to examine all the jurors as to their qualifications and eligibility, and it is too late, after the verdict, to urge that the verdict be set aside because one of the jurors was an alien.

In appellant's supplemental motion for new trial, it was alleged that Andrews was an alien and a subject of Great Britain, and for that reason the verdict should be set aside. Appellant calls attention to the Constitution of the state of Arkansas, and to the Arkansas statutes as to qualifications of jurors.

This court recently said: ''We have stated the rule on this subject to be that 'when objection is made to a juror after the verdict for the first time, due diligence must be shown by the objecting party,' and that it then 'becomes to some extent a matter of discretion with the trial court as to whether or not the verdict shall be set aside; and when there is no fraud intended or wrong done or collusion on the part of the successful party, it is not reversible error for the trial court to refuse to set aside the verdict'.'' *Fones Bros. Hdw. Co.* v. *Mears*, 182 Ark. 533, 32 S. W. 2d 313; *Durben* v. *Montgomery*, 145 Ark. 368, 224 S. W. 729.

In the case of *Doyle* v. *State*, 166 Ark. 505, 266 S. W. 459, this court said: ''It is asserted that a juror who served at the trial was ineligible to serve for the reason that he had not paid his poll tax. It does not appear, however, that the juror imposed himself on the court

1160

and defendant by representing that he had done so, and this question cannot be raised after trial, when the defendant did not avail himself of the opportunity, on the examination of the jurors on their *voir dire,* to ascertain if they possessed this qualification." *James* v. *State,* 68 Ark. 464, 60 S. W. 29; *Teel* v. *State,* 129 Ark. 180, 195 S. W. 32; *Harmon* v. *State,* 190 Ark. 823, 81 S. W. 2d 30.

The fact that the juror was not a citizen of the United States, not a qualified elector, but was an alien, should have been objected to or his competency challenged when the jurors were questioned on their *voir dire.* If a party fails to do this, he waives any objection on that point, even though the disqualification is unknown to him until after the rendition of the verdict. *Cooper* v. *State,* 27 Okla. Crim. 278, 226 Pac. 1066; *Sprat* v. *State,* 55 Okla. Crim. 1, 23 Pac. 2d 223; *Okershauser* v. *State,* 136 Wis. 111, 116 N. W. 769; *Herndon* v. *State,* 2 Ala. App. 118, 56 So. 85.

It is true that an alien is disqualified to act as a juror; so is a nonresident of the county, or one who has not paid his poll tax. But these objections must be made when the juror is examined in his *voir dire.*

The evidence was ample to support the verdict, and the jury was fully and correctly instructed as to the law.

The judgment is affirmed.