4169                            141 S. W. 2d 852

Opinion delivered July 1, 1940.

*Jas. S. McConnell,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

Smith, J.    Appellant was given a life sentence in the penitentiary for murdering Inez Hendrix, and this appeal is from that judgment.

For the reversal of this judgment it is insisted that incompetent testimony was admitted, including an alleged confession; that the competent testimony is insufficient to sustain the verdict, and that it was error to permit the sheriff to have charge of the jury, inasmuch as he was one of the principal witnesses for the state.

Deceased was the wife of Houston Hendrix, who left his home immediately after eating breakfast on the morning of February 15th to sow oats for a man who had employed him for that purpose. He returned home about 5 o'clock in the afternoon, and saw his mother taking home with her his two children, who were twins about 13 months old. His mother had been told that the children were at their home alone, without heat in the house and were nearly frozen. Houston hurried home and began calling his neighbors when he failed to find his wife. He discovered that the well bucket and the pulley with which it was lowered and raised were missing, and this confirmed the belief that his wife was in the well. A hook was fashioned and the body of Inez was brought to the surface. A neighbor was lowered into the well, and the body was taken out of it and the sheriff was immediately notified. Appellant and a boy named Bernice Hendrix, who was 16 years old, were suspected, and both were arrested. Both appellant and Bernice had been hauling pine stumps for fuel in separate wagons from a nearby tract of cut-over land during that day. The tracks of both wagons were observed, and human tracks were discovered leading from the tracks of appellant's wagon both to and from the home of Inez. The stride of the tracks leading from the home were much longer than those leading to it, indicating that the person who made them was running as he returned to the wagon tracks.

The sheriff took appellant to the wagon tracks, and told him to remove his shoes, which he did, and the shoes fitted into the shoe tracks. Appellant testified that the shoe tracks did not fit his shoe until the shoe was pressed down into the earth, which was soft from a recent rain. This was one of the disputed questions of fact in the case.

The sheriff made a plaster cast of the tracks, into which the shoe was placed in the presence of the jury. The admission of this testimony is one of the errors assigned for the reversal of the judgment.

The admissibility of such testimony is the subject of an extended note to the case of *Biggs* v. *State of Indiana*. 201 Ind. 200, 167 N. E. 129, 64 A. L. R. 1085. A headnote

to that case is: "The taking of his shoes from one arrested for stealing corn, to show the tracks made by them were like tracks near the crib from which the corn was stolen, does not violate a constitutional provision that one shall not be compelled in a criminal case to bear witness against himself."

It is uniformly held that it is admissible to show that the tracks in question resembled those made by the accused; but there is a contrariety of views as to whether the accused may be compelled to remove his shoes for the purpose of comparison.

Professor Wigmore says (§ 2265, Vol. 8, Wigmore on Evidence): "From the general principle (*ante*, § 2263) it results that an inspection of the bodily features by the tribunal or by witnesses cannot violate the privilege, because it does not call upon the accused as a witness, *i. e.*, upon his testimonial responsibility. That he may in such cases be required sometimes to exercise muscular action—as when he is required to take off his shoes or roll up his sleeves—is immaterial, unless all bodily action were synonymous with testimonial utterance; for, as already observed, not compulsion alone is the component idea of the privilege, but testimonial compulsion."

Cases cited in the notes to the text quoted indicate, as the learned author observes, that each state court "may have its own special attitude toward the whole principle."

The same conflict exists on this question as is found in cases relating to the introduction of evidence obtained by illegal search and seizure, many of which are summarized by the annotator in the note to the case of *Biggs* v. *State of Indiana, supra*, who states that "The weight of authority supports the proposition that the admission in evidence of shoes taken forcibly from the person of one under arrest for commission of a crime, or of the result of a comparison of the tracks with the shoes so obtained, for the purpose of connecting him with the person who made the tracks, found near the scene of the crime, does not violate the rule against self-incrimination."

It is not contended that appellant was forced to remove his shoes, or that he did so under protest. But if this claim were made, the jury might well have found to the contrary, as the testimony on the part of the state is that appellant removed his shoe without protest.

In our own recent case of *Penton* v. *State*, 194 Ark. 503, 109 S. W. 2d 131, the testimony was to the effect that the sheriff took the accused to the place where the body of a murdered man was lying "and made him make a track beside it." The accused in that case did not insist that force was employed or that he was threatened. We there said that the word "made" used by the sheriff did not necessarily imply compulsion, and was doubtless used in a sense synonymous with "directed."

We conclude there was no error in the admission of the testimony relating to the tracks, as all the cases appear to hold that such comparison is competent where it is made with the consent of the accused.

While appellant was confined in jail awaiting trial he wrote a very incriminating letter to his wife, to the admission of which it was objected that the letter was a privileged communication.

In the case of *Hammons* v. *State,* 73 Ark. 495, 84 S. W. 718, 68 L. R. A. 234, 108 Am. St. Reps. 66, 3 Ann. Cas. 912, it was held that a letter from the accused to his wife intercepted and never delivered to her is admissible in evidence against the writer. That opinion was by a divided court, and its annotation in the reports just cited show an irreconcilable conflict in the authorities; but we are unwilling to overrule our Hammons case, *supra,* and we, therefore, hold there was no error in the admission of the letter.

The chief insistence for the reversal of the judgment is that error was committed in the admission of the alleged confessions made by appellant, the contention being that the confessions were obtained through duress and by putting appellant in fear of violence to his person. When the objection was made to the admission of the confessions, the court pursued the practice many times approved

by this court and restated in the case of *Brown* v. *State*, 198 Ark. 920, 132 S. W. 2d 15, which restatement was approved in the case of *Charles* v. *State*, 198 Ark. 1154, 133 S. W. 2d 26. The court heard, in the absence of the jury, as a preliminary matter, the testimony as to the circumstances under which the confessions were made, and as the testimony was in direct conflict as to whether they were voluntarily made, that question was submitted to the jury under instructions which told them to disregard the confessions, and not to consider them for any purpose, unless they were found to have been freely and voluntarily made.

In his first confession appellant related the revolting details of his crime, and implicated the boy Bernice Hendrix.

In his second confession he exonerated the boy, and denied having first raped the woman he later killed. This confession was reduced to writing, and was signed and sworn to. It was later revised to contain certain immaterial corrections. According to this confession, appellant denied having first raped the woman. He testified that Inez first agreed to have sexual intercourse with him, but then demanded that it be a cash transaction, and that while he was trying to persuade her and to remove her bloomers she struck him on his penis. He then told her that if she did not consent, he would throw her in the well, and this he did when she persisted in her refusal, and when she first came up out of the water "she grabbed the well rope and broke the wire to which the pulley was tied and the whole of it fell in." A large club was found near the porch and some blood stains were found on the walls of the house. There was found near the top of the woman's head a hole, into which the witnesses stated one could insert his thumb. Various bruises and scratches were found about the neck and face of the dead woman, and in one of these there was found a substance which looked like, and was thought to be, finger nail polish. Under appellant's thumb nail a particle of a similar substance was found, which appellant admitted was a finger nail polish which he had used. A red spot

was found on one of appellant's shoes, but he testified that this was paint which got on his shoe while he was painting a bicycle. In his confession, appellant stated that he threw a rock on the woman before she sank in the well. The water was bailed out of the well, and at its bottom a rock weighing about 20 pounds was found, as was also the bloomers which Inez wore on the day of her death.

The confession was established not only by the testimony of the sheriff, but by that of a number of other witnesses; indeed, among these were prisoners in the jail, who testified as to confessions made to them in the absence of any officer or other person except themselves.

The insistence that the sheriff, having been used as a material witness, should have been displaced and not allowed to have custody of the jury, may be first answered by saying that no such request was made; and that it would have been unavailing, had it been made, is decided in the opinion in the case of *Maxwell* v. *State,* 188 Ark. 111, 64 S. W. 2d 79. See, also, *Rayburn* v. *State, ante,* p. 914, 141 S. W. 2d 532.

It is not contended that there was any communication between the sheriff and the jury relating to the trial, or that the sheriff was otherwise guilty of any misconduct.

Under these facts, there appears to have been no miscarriage of justice of which appellant may complain, and as no error appears the judgment must be affirmed, and it is so ordered.