FORESTER *v.* STATE.

4783                                    272 S. W. 2d 320

Opinion delivered November 8, 1954.

*Ernie E. Wright* and *Emery D. Curlee,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Assistant Attorney General, for appellee.

MINOR W. MILLWEE, Justice. The defendant, Charles L. Forester, was charged with the crime of murder in the first degree in the death of his wife, Kathryn Forester. He was found guilty of involuntary manslaughter, and

his punishment was fixed by the jury at one year in the State Penitentiary.

The defendant was 62 years of age and his wife 73 years old at the time of her death. . Both had been suffering from diabetes for some time. On December 8, 1953, Mrs. Forester was admitted to the Saltzman Hospital at Mountain Home, Arkansas, at about 2:50 p.m. The defendant brought her to the hospital but stayed only a short time. She was examined by Dr. H. K. Baldridge and found to be suffering from diabetes and acidosis for which treatment was given. The examination also revealed that Mrs. Forester had multiple contusions, lacerations, bruises and abrasions about the head and face that appeared to have been recently inflicted. There were also abrasions on the hands and forearms. Mrs. Forester died about 9:15 p.m. Dr. Baldridge was not sufficiently convinced that diabetes was the cause of death to sign a death certificate to that effect and was of the opinion that deceased had a "slight depressed skull fracture." The sheriff was notified and an investigation was conducted.

An autopsy was performed by Dr. Glen Wilhite of the University Hospital at Little Rock, Arkansas, on December 9, 1953, revealing a swelling of the brain and the presence of blood clots beneath the brain. In the doctor's opinion, death was caused by a swelling of the brain due to a trauma or blow. There was no fracture of the skull in his opinion but there was a hemorrhage of the covering of the brain and a possible fracture of the right jaw.

After conferring with Dr. Baldridge and others at the hospital shortly after Mrs. Forester's death, the sheriff went to defendant's home in company with a deputy and the assistant prosecuting attorney. In looking over the house they found two pillow cases and a sweatshirt with considerable blood on them. They also noticed blood spots and some loose hair on the floor. They did not then inform defendant that his wife had died, and after a general conversation, the defendant was placed in jail.

The following morning defendant was questioned by the officers for about one and a half hours and informed of his wife's death. Defendant then signed a written statement in which he admitted that, after drinking some gin and beer on the morning in question and becoming irritated with his wife, he struck or "tapped" her two or three times on the head with a "little green stick of wood." He then laid her on the bed and decided to take her to a doctor when he noticed how badly she was bleeding from the mouth and a place over her eye. Several witnesses testified to the voluntary nature of the purported confession. During the trial defendant conceded there were no threats or promises made to obtain the statement. However, defendant offered some evidence tending to show that he was nervous and suffering from the shock of his wife's death at the time. In his testimony he repudiated the purported confession and stated that he signed it to put an end to the questioning and because the officers had untruthfully implied by their questions that his wife had stated that defendant struck her.

The first contention for reversal is that, aside from the confession, there is insufficient evidence to show that a crime was committed by someone. It is true that under our statute (Ark. Stats., § 43-2115) an extra judicial confession will not warrant a conviction unless accompanied with other proof that such offense was committed by someone. In *Charles* v. *State,* 198 Ark. 1154, 133 S. W. 2d 26, we said there must be evidence that the crime charged was committed by someone before a confession can be introduced. We hold the evidence here sufficient to meet the statutory requirement. The physical condition of deceased, the bloody clothing and loose hair of deceased found in the home, together with the medical testimony that death was caused by trauma or a blow amounted to some proof of the *corpus delecti,* and its weight and sufficiency were properly left to the jury. *Edmonds* v. *State,* 34 Ark. 720; *Hall* v. *State,* 209 Ark. 180, 189 S. W. 2d 917.

It is next argued that the court erred in refusing to give four of sixteen instructions which were requested by the defendant. The record reflects only a general exception to the refusal to give the instructions requested collectively, and in the motion for new trial there was one exception to the refusal to give twelve of said requested instructions as a group or *en masse.* It is well settled that a general exception to the refusal to give several instructions requested collectively will not be considered on appeal, if any of them are bad. *Tiner* v. *State,* 109 Ark. 138, 158 S. W. 1087; *Massey* v. *State,* 207 Ark. 675, 182 S. W. 2d 671. One of the requested instructions required the jury to find that the purported confession was voluntarily given beyond ''any doubt whatsoever,'' while another required such finding ''beyond a reasonable doubt.'' Each of said requested instructions was in conflict with Instruction No. 12 given by the court which correctly required the state to prove the voluntary character of the confession by a preponderance of the evidence. *Hall* v. *State,* 125 Ark. 263, 188 S. W. 801. Under the settled rule the exception in gross to the court's refusal to give the several instructions will not be considered.

It is finally insisted that the verdict of the jury is contrary to the manifest weight of the evidence. In this connection defendant points to certain medical testimony to the effect that the possibility of Mrs. Forester's death as a result of diabetes and acidosis rather than trauma could not be dismissed from consideration. It is true that there was a conflict in the medical testimony on this vital issue but the weight and credibility of such evidence was a question for the jury, and not this court, under our well settled rule.

We have examined other assignments of error which are not argued and find them to be without merit. The judgment is accordingly affirmed.