KASINGER *v.* STATE.

5013, 5014, 5015                              354 S. W. 2d 718

Opinion delivered March 12, 1962.

*Roy E. Danuser,* for appellant.

*Frank Holt,* Attorney General, by *Milas H. Hale,* Asst. Attorney General, for appellee.

CARLETON HARRIS, Chief Justice.   Appellants, David Kasinger, age 18, Dale Kasinger, age 19, and Ray Kasinger, age 18, were charged by Information with the crimes of burglary and grand larceny. The cases were consolidated for trial. On trial, appellants were acquitted on the charge of grand larceny, but were found guilty

of burglary, and punishment fixed at confinement in the Arkansas State Penitentiary for a period of two years; the jury recommended, however, a suspended sentence. The Court did not follow the recommendation, but entered its judgment sentencing all appellants to a term of two years. From such judgment, comes this appeal.

On the evening of Saturday, January 30, 1960, the McCabe Tractor and Implement Company, located in Mountain Home, was burglarized, and the following Monday morning, the burglary was discovered by an employee of the company. A safe containing approximately $350 had been removed from the premises. The Sheriff of Baxter County commenced his investigation on the morning of February 1, and appellants were arrested on March 16, 1960, and subsequently charged with the crime. For reversal, appellants assert a number of alleged errors, which we proceed to discuss.

First, appellants argue that the State failed to prove that the crime was committed in Baxter County, Arkansas. We find no merit in this contention. § 43-1426, Ark. Stats., provides:

"It shall be presumed upon trial that the offense charged in the indictment was committed within the jurisdiction of the court and the court may pronounce the proper judgment accordingly, unless the evidence affirmatively shows otherwise."

The Informations charged that the offenses were committed in Baxter County, but no one directly testified to that effect; however, there are several references in the evidence to the fact that the McCabe Tractor and Implement Company building was located in Mountain Home, county seat of Baxter County. In *Henley* v. *State*, 210 Ark. 759, 197 S. W. 2d 468, this Court, in passing upon this question, said:

"The evidence in the case at bar does not affirmatively show that the crime was committed 'otherwise' than in the jurisdiction of the court where defendant was tried. On the contrary, we think the evidence does

show affirmatively that the offense charged in the information was committed in Lee County. Several witnesses testified that the home of Jessie Day, where the killing occurred, was located on the state highway between Marianna and the village of Aubrey. We judicially know that the village of Aubrey is in Lee County and an inspection of the maps of the county discloses that any point on the public highway between Marianna and Aubrey is well within the territorial limits of Lee County.''

Likewise, we judicially know that Mountain Home is located in Baxter County. Actually, this Court upheld a conviction in *Meador* v. *State,* 201 Ark. 1083, 148 S. W. 2d 653, on appeal from the Grant Circuit Court, where the offense had been committed, though the Information erroneously charged that the crime was committed in Hot Spring County.

Appellants contend that error was committed when the Sheriff of Baxter County was asked by the State's attorney why he moved the appellants to a jail in Yellville, Marion County, and he replied, ''They'd broke jail here before''; also, error is asserted because of a question asked appellant Ray Kasinger by the State's attorney, ''How many times has Jack Gregory arrested you?'' In each instance, the Court instructed the jury not to consider this question and answer. In *Davis* v. *State,* 155 Ark. 245, 244 S. W. 750, the prosecuting attorney made certain remarks which the appellant contended to be prejudicial, but this Court said:

''It will be noted that the court instructed the jury to disregard the remarks made by the prosecuting attorney and this, we think, had the effect to cure any prejudice that might have resulted to the defendants from the remarks.''

See also *Washington* v. *State,* 227 Ark. 255, 297 S. W. 2d 930. Accordingly, we find no merit in this contention.

Appellants assert that the Court erred in not following the recommendation of the jury that sentence be

suspended. This was not error. We have held on several occasions that the Court is not bound to accept the jury's recommendation to suspend sentence. See *Clarkson* v. *State,* 168 Ark. 1122, 273 S. W. 353; *Warford and Clift* v. *State,* 214 Ark. 423, 216 S. W. 2d 781.

Appellants question the sufficiency of the evidence to sustain the convictions. We have previously held that the extra-judicial confession of a defendant, accompanied by proof the offense was actually committed by someone, will warrant a conviction. See *Monts* v. *State,* 233 Ark. 816, 349 S. W. 2d 830; also, *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, and cases cited therein. In the case before us, there was ample proof that the McCabe Tractor Company of Mountain Home had been burglarized, and all three defendants confessed their participation in the crime. Accordingly, if the confessions were voluntary, the evidence was sufficient to sustain the conviction. This last statement brings us to a discussion of the confessions, and whether, under the proof in the record, same have been established as having been given voluntarily.

In discussing this point, it is necessary that we review the facts from the time the boys were arrested. Dale Kasinger was arrested soon after the noon hour on Wednesday, March 16th, and was questioned for a brief period by the Sheriff of Baxter County. He was then lodged in jail, and later in the day taken to Yellville, county seat of an adjoining county, where he, on the same night, confessed his participation in the burglary. The Sheriff stated that he took Dale to Yellville because he wished to separate the boys, and did not have adequate facilities in the Baxter County jail to do this. Dale was returned to the Baxter County jail on Friday night, March 18th. Ray and David[1] were also arrested on the afternoon of the 16th, and were lodged in the Baxter County jail. They confessed their participation in the burglary on March 19th; this confession was also signed by Dale, and was witnessed by Sheriff Gregory, State

---

[1] David and Dale are brothers, and are cousins to Ray.

Policeman Bill Manes, and Earl Rife, Criminal Investigator for the State Police.[2] These men, who witnessed the statement, also testified that two other officers, Sergeant Bowden of the State Police, and Fred Brunson, Deputy Sheriff, were present when the statement was taken. All of these boys were arrested without warrants, and none were taken before a magistrate. Shortly before the arrest of Dale, a fourth alleged participant, J. W. Studdard, had been arrested and placed in the Baxter County jail.[3] According to the evidence, Dale's first confession was made at the Marion County jail (Yellville) in the presence of the Baxter County sheriff, the Marion County sheriff, and Claude Wynn, a visitor at the jail. The confession was written out in longhand, partly by the sheriff of Baxter County, and partly by the sheriff of Marion County, and signed by this appellant. The witnesses to the confession stated that it was given voluntarily, though Kasinger stated that he was threatened while the drive was being made to Yellville; that the sheriff "pulled my hair", and that he signed the statement through fear of physical mistreatment. As far as this confession, standing alone, was concerned, the voluntariness of same appears to have been a matter for the jury to determine, but, as previously stated, Kasinger also signed a second confession with his brother and cousin. It is the latter confession which gives us much concern.

The fourth man arrested, Studdard, testified that while in jail, he was beaten by one of the officers, suffering a bloody nose, and bruised face and lips. Studdard stated that he was subsequently taken to the hospital by Deputy Sheriff Brunson, where he was examined and observed by Dr. Guinee, and that the doctor took x-rays. The witness further testified that the Kasinger boys saw his condition, and each appellant also stated that they observed Studdard's face, and blood in his cell. Rex

---

[2] The statement was written in longhand by Manes.

[3] Studdard did not confess, and apparently has never been brought to trial.

Baker, a prisoner in the jail on a drunkenness charge,[4] testified that he saw one of the officers strike Studdard with his fists several times; that later he again saw Studdard, and "His nose was smashed, and he had blood on his handkerchief." All three of the appellants testified that they were threatened with similar treatment, and because of their fear, signed the confession.

Jess Dover, grandfather of Studdard, Mr. and Mrs. Leonard Kasinger, parents of Ray, and Ben Kasinger, father of Dale and David, visited the boys several days after they had been arrested, and all testified either that they observed evidence of Studdard's having been beaten, or saw blood on the floor. The officer who was accused by Studdard and Baker of striking the former, denied the charge, and the other officers, previously listed, who were present when the statement was taken, testified that they saw no evidence of any mistreatment of Studdard, and that the three appellants executed the statement voluntarily. All of the defendants stated that they requested the services of an attorney, but this was not allowed. The officers denied that such a request was made. Appellants also testified that the weather was very cold[5] at the time they were arrested, but that inadequate cover was furnished. According to Dale, there was no heat at night, several of the jail's windowpanes were broken, and snow and ice coated the ground. David testified likewise that some windows were broken; that there was no heat at night; that he was given a blanket, but no mattress, and had nothing else to wrap up in; that all appellants had to sleep on the floor.

To summarize the evidence from the record, as testified to by appellants and their witnesses: They were arrested without a warrant (the information was filed and a warrant was issued on March 18th), and held in jail from the 16th until the 19th before the confessions were obtained (excluding the first confession signed by

---

[4] Baker had been in jail several days before appellants were arrested.

[5] The sheriff testified there was snow on the ground.

Dale). During this time, they were without an attorney, did not see their parents, observed the condition of Studdard's face and were told by him that he had been beaten by one of the officers, saw blood in his cell, were placed in a cell which was very cold at night, and were without adequate cover, and were threatened with the "same treatment" received by Studdard unless they confessed. From the State's standpoint, the officers who witnessed the confession stated it was given voluntarily, and the boys were not pressured or threatened. The officer (not one of those present when the statement was signed) who was accused of striking Studdard, denied the charge.

We have reached the conclusion that, under the testimony shown in this record, the jury should not have been permitted to consider this confession. Perhaps none of the facts mentioned, separately, would justify this conclusion. But we particularly scrutinize confessions when there is no corroborating evidence, standing alone, to implicate a defendant. The fact that the arrests were made without a warrant, and further, that appellants were not taken before a magistrate, does not, in itself, render the confession(s) inadmissible. *Browning* v. *State,* 206 Ark. 791, 178 S. W. 2d 77. The fact that they were held for several days does not, standing alone, invalidate the confession. Of course, the question of whether the boys requested an attorney was a question of fact, which the jury could properly determine. There are two matters that were mentioned in the testimony which we particularly notice. One relates to the statement of Studdard that he was taken to the hospital to see Dr. Guinee (apparently the coroner of the county) relative to the beating that he had received, and that Dr. Guinee took x-rays. We particularly note this testimony, because it was not denied. Nor was it denied that the boys had the opportunity to see Studdard, or his cell, after the alleged beating occurred. Dr. Guinee's testimony could have been most enlightening on this question. It may be that Studdard was taken to Guinee for some other ailment (if at all taken), but this testimony by Studdard should have

been easy to refute. Lest it be said that appellants could have brought Dr. Guinee into court, we point out that the burden is upon the State to establish by a preponderance of the testimony that a confession is voluntary. As the Court told the jury:

"The presumption of law is that any confession made by a defendant, when he is in the custody of officers, whether these officers be sheriff, detectives, State Policemen, Prosecuting Attorney, or any other, a confession given them is involuntary and cannot be considered of value. The effect of that presumption is to cast the burden of proof upon the State and to prove that by a preponderance of testimony the confession was voluntary. The State must overcome that presumption of law to your satisfaction, and the burden is on the State to show that the confession was voluntary."

Since Studdard made a definite identification of the doctor who treated him, and there was independent evidence (testimony of Baker) that the beating had taken place, we think Guinee's testimony would have been particularly important in bearing upon this question. For that matter, Deputy Sheriff Brunson, who, according to Studdard, took him to the hospital, made no comment relative to Studdard's statement, though he appeared in rebuttal subsequent to the former's testimony.

The other fact that has some significance is the testimony relative to the condition of the jail, i.e., broken windows, sleeping on the floor, no heat at night, and inadequate cover. It was established, even by the State's evidence, that snow was on the ground, but no officer denied these particular facts. Of course, if these statements were true, the conditions testified about could well contribute to breaking down the will of the boys, and, with the hope of obtaining better conditions, influence them in signing the confession. An examination of the testimony reveals that not a single officer denied, or commented upon, this particular testimony by the appellants.

Having mentioned these facts, perhaps it is well to point out explicitly that we are *not* saying that the confessions were obtained by duress; we are *not* saying that they were given involuntarily. We *are* saying that on the record before us, the voluntariness of the confessions is not established. Of course, the matters heretofore referred to could have had no effect on the first confession signed solely by Dale, since he had had no opportunity to view Studdard, nor had he been in the Baxter County jail overnight at the time this confession was given. However, the jury had to consider the second confession in order to convict Ray and David, and we have no way of knowing whether Dale's signature on this second confession caused, or contributed to, his conviction. Under these circumstances, our finding, that the voluntariness of this confession is not shown, also calls for a reversal of the conviction of this appellant. In *Binns* v. *State,* (Amended opinion, April 24, 1961) 233 Ark. 259, 344 S. W. 2d 841, we reversed the judgment of the trial court because it was not sufficiently shown that the confession was given voluntarily. The case was remanded, with the direction that the voluntariness of the confession might again be considered in a new trial. We follow the same procedure here, and this question may again be considered for further development.

While it follows that the judgment must be reversed, we deem it well to mention a few other contentions which might arise at another trial. The sheriff of Baxter County was permitted to testify orally to the contents of the written confession, and it is contended that this was error. We do not agree (provided statements are voluntary). Statements made to an officer are admissible. In *Smith* v. *State,* 230 Ark. 634, 324 S. W. 2d 341, oral statements made to an officer, which were supplemental to a written confession, were held admissible. In the present instance, of course, the sheriff's statements only related to matters contained in the written confessions, and the written confessions were offered in evidence.

Alleged error is asserted because of the court's failure to give certain instructions requested by appellant. We find no error in this connection. The matters complained of were covered by prior instructions of the Court, and there was no necessity to instruct on each detail. For instance, appellants desired an instruction that the fact the arrests were made without a warrant, and the further fact that appellants were not taken before a magistrate, were circumstances for the jury to consider in determining whether the confessions were voluntary. This was proper argument to make to the jury, but no instruction was required.

One instruction probably should be commented upon. We have reference to the instruction relating to an accomplice. The Court's instruction was as follows:

"Now, you are instructed that one who stands by and aids, abets, assists, advises, or encourages another in the commission of a felony is guilty as an accomplice, and is punishable as such. Therefore, if you find from the evidence beyond a reasonable doubt *that someone other than the defendants committed the felony*[6] or if you further find that these defendants or either of them were at the time present, aiding, abetting, assisting, advising or encouraging such person or persons in the commission of the felony as charged in the information, then it is your duty to find him guilty, and if you so find him guilty, to fix his punishment as provided in these instructions as heretofore given you with reference to burglary."

We think the italicized portion might possibly be confusing to a jury. Of course, having read the record, we understand that the Court was referring to the fact that Studdard might have been the principal, with appellants as accomplices. "Or" means "as an alternative, choice of alternative things." The clause following the word "or" and ending with the word "information" is correct, but if this clause be left out, and "or" indicates a choice, then the instruction is left to read, "Therefore,

___
[6] Emphasis supplied.

if you find from the evidence beyond a reasonable doubt that someone other than the defendants committed the felony, then it is your duty to find him guilty, * * *.'' We realize this is a matter of verbiage, but we suggest a rewording of same.

For the reasons herein set out, the judgment is reversed, and the cause remanded to the Baxter Circuit Court.

McFADDIN, J., dissents.

ED. F. McFADDIN, Associate Justice, dissenting. I respectfully, but most vigorously dissent from the ruling of this Court which reverses the judgment of the Circuit Court. As I understand the Majority Opinion, the sole ground for reversal relates to the admission of the confessions made by the three defendants; because the opinion recites: ''We have reached the conclusion that, under the circumstances shown in this record, the jury should not have been permitted to consider this confession.'' The quoted language means that the Trial Judge committed fatal error when he held that there was sufficient evidence to submit to the jury the question of whether the confessions were voluntary.

Before considering such evidence, I desire to mention the rule under which the Trial Court proceeded. In *Morton* v. *State,* 208 Ark. 492, 187 S. W. 2d 335, we said:

IV. *Introduction of the Confession.* When the State offered in evidence two confessions by the appellant, the court followed the correct practice of retiring to chambers and considering the admissibility, in the absence of the jury. See *Charles* v. *State,* 198 Ark. 1154, 133 S. W. 2d 26; *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15; *Nolan and Guthrie* v. *State,* 205 Ark. 103, 167 S. W. 2d 503.' '

In *Ashcraft* v. *State,* 208 Ark. 1089, 189 S. W. 2d 374, we said:

''The proper practice is for the court to hear the testimony in the absence of the jury as to the circum-

stances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made. So here, the court in chambers, in the absence of the jury, heard many witnesses, both on the part of the State and of the defendant as to the circumstances under which the confession was made and this testimony being in irreconciliable conflict as to whether the confession was voluntarily made, that question was submitted to the jury under proper instructions directing them to disregard the confession and not to consider it for any reason unless they found that it was freely and voluntarily made. We hold, therefore, that there was no error in admitting appellant's confession in evidence. See *Morton and Ashcraft* v. *State, supra,* and *Smith* v. *State,* 205 Ark. 1075, 172 S. W. 2d 248; *Hendrix* v. *State,* 200 Ark. 973, 141 S. W. 2d 852; *Burton* v. *State,* 204 Ark. 548, 163 S. W. 2d 160; *Nelson* v. *State,* 190 Ark. 1078, 83 S. W. 2d 539; and *Davis* v. *State,* 182 Ark. 123, 30 S. W. 2d 830.''

Again in *Moore* v. *State,* 229 Ark. 335, 315 S. W. 2d 907 (Certiorari denied by the Supreme Court of the United States, 358 U. S. 946), we said:

''When the State sought to introduce the appellant's confession the hearing was recessed to the Judge's chambers for the Trial Judge to see if there was sufficient evidence of voluntariness to submit the issue to the jury. Such is in accordance with our frequently stated procedure. *Charles* v. *State,* 198 Ark. 1154, 133 S. W. 2d 26; *Brown* v. *State,* 198 Ark. 920, 132 S. W. 2d 15; *Hendrix* v. *State,* 200 Ark. 103, 167 S. W. 2d 503. The Trial judge correctly ruled that there was sufficient evidence offered to take the case to the jury on the voluntariness of the confession; and thereupon the hearing was resumed before the jury.''

Thus, it is standard procedure to have the Court, in the absence of the jury, first hear the proffered evidence

to determine whether there is sufficient evidence of voluntariness to submit the issue to the jury. In the case at bar, the Trial Court followed the standard procedure, and forty-six pages of the transcript contain the testimony so heard by the Court in chambers. A total of seven witnesses were heard by the Court. They were:

1. Dale Kasinger, one of the defendants.

2. Ray Kasinger, one of the defendants.

3. David Kasinger, one of the defendants.

4. Jack Gregory, Sheriff of the County.

5. Earl Rife, Criminal Investigator for the Arkansas State Police.

6. Rex Baker, a fellow jail inmate with the Kasingers.

7. J. W. Studdard, a fellow jail inmate with the Kasingers.

These seven were the only witnesses that testified in the hearing before the Court in chambers. Sheriff Jack Gregory is the Sheriff of Baxter County, and was the Sheriff at all times herein involved. He testified that he took the statement[1] from the three defendants on March 19, 1960, and that the statement from the three defendants was taken three days after the previous statement given him by Dale Kasinger. Sheriff Gregory testified that the defendants "voluntarily and of their own free will and accord made this statement and fixed their names to it"; that one or the other of the three defendants dictated the statements contained in the writing, and then they all read it themselves and each of them signed it. Sheriff Gregory testified that there were no threats or physical force used on any of them at any time, and that the statement was voluntarily made by

---

[1] In some instances the singular is used, as "statement" or "confession", since there was only one instrument signed on March 19, 1960. In other instances the plural "confessions" appears. The intention always is to refer to the pages signed by the defendants on March 19, 1960.

the defendants "of their own free will and without promise of favor or threat of physical harm."

Earl Rife testified that he was a criminal investigator for the State Police and that he assisted Sheriff Gregory in the investigation of the burglary and was present when the three defendants signed the written confession on March 19, 1960. He testified that there were no threats of harm or any coercion used to make the defendants sign the statements in the confession; that they were advised that the statements could be used against them; that they were advised they were entitled to counsel; and that the statement was freely and voluntarily made by each of the three defendants.

Of course, the defendants denied the voluntariness, and the witnesses who supported them were fellow jail inmates. I maintain that the testimony of the two officers made a fact question amply sufficient to support the ruling of the Trial Court, which was that the question of the voluntariness of the confession should be submitted to the jury. In *McClellan* v. *State,* 203 Ark. 386, 156 S. W. 2d 800, we quoted from an earlier case:

"In many instances, where the accused is confronted with a confession which he cannot deny having made, he insists that it was not freely and voluntarily made. But that insistence does not render the confession inadmissible, where there is testimony to the effect that it was in fact, freely and voluntarily made. In such cases the practice approved by us, which was followed in the instant case, is for the court to hear the testimony in the absence of the jury as to the circumstances under which the confession was given, and if there is a substantial question as to whether it was freely and voluntarily made, to submit that question of fact to the jury, after admonishing the jury to disregard the confession unless it was found to have been voluntarily made."

After the above quotation we further said:

"The court strictly followed the above rule in the trial of the present case, and practically all the testi-

mony shows that there were no promises made with reference to this particular case by the prosecuting attorney or anyone else. The trial judge did not pass on the question as to whether the confessions were voluntarily made. He passed on the question of their admissibility alone, and submitted to the jury the question of whether they were voluntarily made.''

I submit that the Majority of this Court is doing violence to all of our previous cases when it holds that the testimony heard by the Trial Judge in chambers in this case was not sufficient to submit the confessions to the jury. The Majority Opinion also shows that it considered testimony that was heard before the jury when the confessions were offered, because the Majority Opinion names such witnesses. If we ever got to the question of whether the verdict of the jury based on the confessions was correct, than I would call attention to what was said in *Palmer* v. *State*, 213 Ark. 956, 214 S. W. 2d 372, in which we reviewed the cases of the Supreme Court of the United States up to that time and pointed out that the United States Supreme Court determines the voluntariness of the confession independently of the conclusion reached by any other fact finding agency or judicial tribunal, whereas, in Arkansas we have always said that if there is substantial evidence to support the jury verdict, then it must be affirmed; and it is my view that until the present opinion this Court has not constituted itself an appellate jury to overrule the verdict.

I submit that in considering whether there is sufficient evidence to support the ruling of the Trial Court in submitting the confession to the jury, this Court has no right to examine the testimony heard before the jury on the voluntariness of the confessions.

Finally, we have here the interesting spectacle of one defendant who confessed and implicated the other defendants, and his confession is admitted by the Majority to be voluntary; and yet a subsequent confession

by the same defendant is ruled to be involuntary. This certainly puts criminal procedure in hopeless confusion.

For the reasons herein stated, I respectfully dissent.