IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 2, 2019

## STATE OF TENNESSEE v. STEVEN MICHAEL ODOM

**Appeal from the Circuit Court for Tipton County**
No. 8904      Joe H. Walker, III, Judge

_____

**No. W2018-01303-CCA-R3-CD**

_____

The Defendant, Steven Michael Odom, was convicted of aggravated robbery, aggravated burglary, aggravated assault, simple possession of marijuana, and possession of drug paraphernalia. The Defendant received an effective sentence of twelve years. On appeal, the Defendant challenges the sufficiency of the evidence for his convictions for aggravated robbery, aggravated burglary, and aggravated assault. Upon review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Lauren A. Raynor, Brighton, Tennessee, for the Appellant, Steven Michael Odom.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Walter James Freeland, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### FACTS AND PROCEDURAL BACKGROUND

The Defendant was working as a confidential informant for the Tipton County Sheriff's Department at the time of his arrest. On June 14, 2016, the Defendant called Lieutenant Chris Williams and Investigator Brett Chunn to inform them that the victim, Mr. John Sanders, had received a new shipment of marijuana and methamphetamine.

The Defendant asked Lieutenant Williams and Investigator Chunn if they wanted to arrange a controlled buy for that day. They informed the Defendant that the following day would be more convenient for them. Rather than waiting for the controlled purchase of drugs, the Defendant and two accomplices robbed and assaulted the victim at his home.

The two co-defendants, Mr. Zachary Wiseman and Mr. Bryan Pilkington, each entered a guilty plea prior to the Defendant's trial. They both pled guilty to facilitation of aggravated robbery, aggravated assault, aggravated burglary, simple possession of marijuana and possession of drug paraphernalia. At the time of the Defendant's trial, neither Mr. Wiseman nor Mr. Pilkington had been sentenced, and each was hoping for leniency in exchange for his testimony.

The Defendant and his two co-defendants, Mr. Pilkington and Mr. Wiseman, went to the victim's house. The Defendant and Mr. Pilkington intended to repay a debt that they each owed to the victim. The Defendant and Mr. Pilkington explained that they had purchased drugs from the victim the previous day and that he had them "on the books." The Defendant, Mr. Pilkington, and Mr. Wiseman developed a plan to sell the victim a television in order to clear their debt. Mr. Pilkington needed money to pay his probation fees from a previous conviction. Mr. Pilkington said the television was "supposed to be a distraction for me to rob him." However, this plan did not succeed.

Instead, the Defendant and Mr. Pilkington went inside the victim's house while Mr. Wiseman waited in the car. The Defendant and Mr. Pilkington smoked methamphetamine with the victim for several hours. The Defendant was communicating with Mr. Wiseman via text message the majority of the time he was in the victim's house. At some point, the Defendant went outside to take a telephone call from his brother.

The Defendant and Mr. Wiseman returned to the victim's house. Mr. Wiseman again remained in the car while the Defendant went inside the house to let Mr. Pilkington know they needed to leave. Mr. Wiseman and Mr. Pilkington both testified that the Defendant was angry when he and Mr. Pilkington returned to the car. Mr. Pilkington recalled that the Defendant was angry because Mr. Pilkington did not respond to Mr. Wiseman's text messages. The Defendant felt that Mr. Pilkington wanted to back out of the robbery and told Mr. Pilkington that if he did so, the Defendant would complete the robbery himself. Mr. Pilkington said the Defendant encouraged him to go through with the plan to rob the victim.

Approximately five minutes later, Mr. Pilkington let the Defendant out of the car two blocks away from the victim's house. Mr. Pilkington and Mr. Wiseman entered the victim's house. Mr. Pilkington was armed with a BB gun that had been painted to make

it look more like a regular firearm, and Mr. Wiseman was armed with a wrench. Mr. Pilkington distracted the victim with the BB gun, and Mr. Wiseman hit the victim in the shoulder multiple times. The victim gave Mr. Pilkington a bag, and Mr. Pilkington and Mr. Wiseman immediately ran to the car. Mr. Pilkington drove the car and picked the Defendant up a few blocks from the victim's house.

The victim testified that money and pieces of his wife's jewelry were taken during the robbery. He testified that Mr. Pilkington pointed a gun at him and that Mr. Wiseman hit him multiple times with a wrench. The victim testified that the Defendant was not in his house at the time of the robbery. The victim's wife recalled two men knocking on the door. She testified that she saw a third man standing at the end of their driveway on their video surveillance camera. She observed one man hit the victim with what she believed was a tire iron. The victim's wife stated that the men took $1,000 from a desk, two rings, and a necklace. She estimated that the jewelry was valued between $400 and $500. She admitted that a small amount of marijuana was also taken.

Mr. Pilkington drove to Walmart but left immediately after the Defendant instructed him to go to the Defendant's grandmother's house instead. When they arrived at the Defendant's grandmother's house, the Defendant began distributing the marijuana taken from the victim's house. Both Mr. Pilkington and Mr. Wiseman testified that the Defendant took the biggest share for himself. The Defendant and Mr. Wiseman stepped outside to smoke marijuana. While they were outside, law enforcement arrived. The Defendant and Mr. Wiseman went back inside the house, and the Defendant instructed Mr. Wiseman where to hide the stolen marijuana.

Lieutenant Williams arrived at the Defendant's grandmother's house around 5:30 a.m. The Defendant told him where the marijuana was hidden. Lieutenant Williams found approximately 200 grams of marijuana at the residence and questioned the Defendant and the two co-defendants at the residence. Either the Defendant or one of the co-defendants mentioned a torque wrench. The Defendant informed Lieutenant Williams where the BB gun was located, and the BB gun was recovered. Lieutenant Williams testified that there was an attempt to conduct fingerprint analysis on the BB gun, but the attempt was unsuccessful.

Detective Brandon Shelton with the Tipton County Sheriff's Office and Investigator Chunn began interviewing the Defendant at approximately 8:30 a.m. The interview was recorded, and portions of the interview were played for the jury during the trial. Detective Shelton did not believe that the Defendant appeared to be under the influence of alcohol or narcotics at the time of his interview. Detective Shelton typed the Defendant's statement as the Defendant spoke. He acknowledged that the statement was not verbatim the words the Defendant spoke while giving his statement, but he stated that

the Defendant read the statement and was given an opportunity to amend it. The statement was entered into evidence as exhibit 11. In the statement, the Defendant explained that he needed money to pay the victim money he owed him from purchasing methamphetamine. The Defendant stated that he and Mr. Pilkington decided to sell the victim the television in order to pay their debt; however, the victim did not pay them with money and gave them more methamphetamine instead. The Defendant admitted to knowing about the planned robbery and even stated that he asked Mr. Pilkington if he "still wanted to rob [the victim]." The Defendant also informed the officers of the location where he threw the BB gun.

Special Agent Leela Jackson of the Tennessee Bureau of Investigation ("TBI") was accepted by the trial court as an expert in drug analysis. She analyzed the substance recovered and determined that it was marijuana, a schedule VI drug. She only conducted an analysis of a bag that contained 27.98 grams of marijuana. She confirmed the total weight of substance she received was 129.02 grams.

The Defendant testified on his own behalf at trial. He admitted to purchasing marijuana and methamphetamine from the victim for both his personal use as well as in his capacity as a confidential informant. He admitted to smoking methamphetamine while at the victim's house the same night as the robbery. The Defendant explained that he pretended to take a phone call while at the victim's home in order to call Mr. Wiseman. When the Defendant went outside to make a phone call, Mr. Wiseman was no longer waiting in the car. The Defendant then got in the car and began searching for Mr. Wiseman. He located Mr. Wiseman walking a few blocks away from the victim's home. Once Mr. Wiseman was in the car, Mr. Wiseman sent text messages to Mr. Pilkington, but Mr. Pilkington did not respond. The Defendant explained that he was angry with Mr. Pilkington for not communicating with him and expressed his anger when he could not contact Mr. Pilkington while he was outside the house with Mr. Wiseman.

On cross-examination, the Defendant testified that he was under the influence of marijuana and methamphetamine at the time he gave his statement to law enforcement. However, he stated that he did not think he "was so out of it that I didn't know what was going on." He admitted that it was his idea to give the victim the television in an attempt to settle his and Mr. Pilkington's debt. The Defendant repeatedly stated that he was not present when Mr. Wiseman and Mr. Pilkington entered the victim's house. However, he "was in the conversation" when the robbery was planned. He knew that the BB gun and the wrench were going to be used in the robbery prior to its occurrence. The BB gun belonged to the Defendant's nephew. He was present when the orange tip on the BB gun was painted to make it look more like a gun, and he supplied the Sharpie used to cover the orange tip. He admitted to throwing the BB gun out of the car window after the robbery occurred.

The jury returned a verdict convicting the Defendant of aggravated robbery, aggravated burglary, aggravated assault, simple possession of marijuana, and possession of drug paraphernalia. The trial court imposed an effective sentence of twelve years. The Defendant appeals.

**ANALYSIS**

The Defendant maintains that the evidence is insufficient to support his convictions for aggravated robbery, aggravated burglary, and aggravated assault. The standard for appellate review when determining the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Davis*, 354 S.W.2d 718, 239 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 207, 3199 (1979)). A jury conviction removes a defendant's presumption of innocence and "replaces it with one of guilt at the appellate level." *State v. Perrier*, 536 S.W.3d 388, 408 (Tenn. 2017). The burden of proof on appeal shifts from the State to the Defendant, who must prove that the evidence at trial is insufficient to support the jury's verdict. *Id.* This court affords the State the "strongest legitimate view of the evidence presented at trial and the reasonable and legitimate inferences that may be drawn from the evidence." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012). This court will not reweigh the credibility of witnesses nor the weight to be given to their testimony, and "the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *Id.* (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This court will not reweigh the evidence or substitute its inferences. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Circumstantial and direct evidence are reviewed under the same standard of review. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

"Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401. As it relates to this case, robbery becomes aggravated when the robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a)(1). Aggravated burglary is the "burglary of a habitation." T.C.A. § 39-14-403(a). A burglary occurs when a person enters a building "without effective consent" with the purpose of committing a "felony, theft or assault." T.C.A. § 39-14-402(a)(1). A person commits aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another through the use or display of a deadly weapon. T.C.A. §§ 39-13-101(1), -102(a)(1)(A)(iii) (Supp. 2015).

At trial, the State argued that the Defendant was guilty of the indicted offenses under a theory of criminal responsibility. "A person is criminally responsible as a party to an offense, if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." T.C.A. § 39-11-401(a). A defendant can be held criminally responsible for the conduct of another if "[a]cting with the intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Mere presence and companionship with the perpetrators before or after the commission of the crime does not give rise to criminal responsibility. *Dorantes*, 331 S.W.3d at 386 (quoting *State v. Phillips*, 76 S.W.3d 1, 9 (Tenn. Crim. App. 2001)). The evidence at trial "must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Id.* (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)).

The Defendant does not challenge the sufficiency of the evidence as it relates to the elements of the offenses on appeal. Rather, he maintains that the evidence is insufficient to establish his guilt based upon a theory of criminal responsibility. In viewing the evidence in the light most favorable to the State, the evidence at trial established that the Defendant was involved in planning the robbery, provided the BB gun and the wrench, and took a share of the stolen marijuana. The Defendant admitted that he supplied the Sharpie for the purpose of painting the BB gun so that it would look like a real gun. At the time he provided the Sharpie, he knew that the BB gun was going to be used to rob the victim. The Defendant also provided the wrench that Mr. Wiseman used to hit the victim during the robbery. He admitted that he gave Mr. Wiseman the wrench so that he could use it during the robbery. After the robbery was completed, the Defendant threw the BB gun out of the window. When asked on cross-examination whether he planned to benefit from the stolen marijuana, the Defendant responded, "I believe so, yes, sir."

The evidence clearly established that the Defendant intended "to promote or assist the commission of the offense." T.C.A. § 39-11-402(2). Additionally, the Defendant also sought "to benefit in the proceeds or results of the offense." *Id.* We conclude that the evidence at trial established that the Defendant intended to benefit from the proceeds of the robbery and aided his co-defendants in planning the robbery.

The Defendant also argues that if he is criminally responsible for the actions of Mr. Wiseman and Mr. Pilkington, then he can only be held responsible for facilitation of aggravated robbery. It is not a defense for a person convicted under a theory of criminal responsibility that "[t]he person for whose conduct the defendant is criminally

responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or different type or class of offense, or is immune from prosecution." T.C.A. § 39-11-407(2). Accordingly, the Defendant has not shown that he is entitled to relief.

**CONCLUSION**

Based on the foregoing, we affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE