## TURNER v. LOUISIANA.

No. 53. Argued November 19, 1964.—Decided January 18, 1965.

*Allen B. Pierson, Jr.,* argued the cause for petitioner. With him on the brief was *Burrell J. Carter.*

*Leonard E. Yokum* argued the cause for respondent. With him on the brief were *Jack P. F. Gremillion,* Attorney General of Louisiana, *M. E. Culligan,* Assistant Attorney General, and *Duncan S. Kemp.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The petitioner, Wayne Turner, was indicted in Tangipahoa Parish, Louisiana, upon a charge of murder committed during the course of a robbery. After a three-day trial a jury found him guilty as charged. He was sentenced to death. The conviction was affirmed by the Supreme Court of Louisiana,[1] and we granted certiorari[2] to consider the claim that the circumstances attending

---

[1] 244 La. 447, 152 So. 2d 555.
[2] 376 U. S. 949.

the trial were such as to deprive Turner of a right secured to him by the Fourteenth Amendment.

The two principal witnesses for the prosecution at the trial were Vincent Rispone and Hulon Simmons. Both were deputy sheriffs of Tangipahoa Parish. On direct examination Rispone described in detail an investigation he said he had made at the scene of the murder. He further testified that he and Simmons later took Turner into custody, and that Turner had led them to a place in the woods where the cartridge clip from the murder weapon was recovered. Simmons corroborated Rispone's testimony about apprehending Turner and finding the cartridge clip, and also told of certain damaging admissions which he said had been made by Turner at the time of his apprehension. In addition, Simmons described the circumstances under which he said he had later prevailed upon Turner to make a written confession. This confession was introduced in evidence. Both Rispone and Simmons were cross-examined at length with respect to all aspects of their testimony. Turner did not take the witness stand in his own behalf.[3]

The members of the jury were sequestered in accordance with Louisiana law during the course of the trial,[4] and were "placed in charge of the Sheriff" by the

---

[3] Out of the presence of the jury, Turner did testify upon the issue of the voluntariness of his confession, stating among other things that he had had no sleep and nothing to eat for a period of 48 hours before he confessed, but he was not in custody during much of that period. He also stated that he was not advised of his "legal rights" before he confessed.

[4] "From the moment of the acceptance of any juror until the rendition of verdict or the entry of a mistrial, as the case may be, the jurors shall be kept together under the charge of an officer in such a way as to be secluded from all outside communication; provided that in cases not capital the judge may, in his discretion, permit the jurors to separate at any time before the actual delivery of his charge." La. Rev. Stat. § 15:394.

trial judge. In practice, this meant that the jurors were continuously in the company of deputy sheriffs of Tangipahoa Parish during the three days that the trial lasted. The deputies drove the jurors to a restaurant for each meal, and to their lodgings each night. The deputies ate with them, conversed with them, and did errands for them.[5]

Two of the deputy sheriffs who were in this close and continual association with the jurors were Vincent Rispone and Hulon Simmons. Turner's counsel moved for a mistrial when Rispone testified as a witness for the prosecution, and made the same motion when Simmons testified. The brief hearings on these motions established that both Rispone and Simmons had in fact freely mingled and conversed with the jurors in and out of the courthouse during the trial.[6] The court denied the mo-

---

[5] In adjourning court after the first day of trial, the judge told the jury: "Anything that you need you will have to obtain through the Deputy, and any calls that you want to make the Deputies will have to make for you."

[6] Rispone testified in part as follows:

"Q. Have you been assisting the other Deputies during the course of this trial, in retiring the Jury and in caring for their needs? A. I have.

"Q. As much as any other Deputy on the Sheriff's staff? A. I would say as much.

"Q. Isn't it a fact that you have been sitting in this vicinity through the course of the trial? A. That is a fact.

"Q. Have you spoken at any time during the course of the trial to any of the Jurors? About anything? A. About anything?

"By the Counsel: Yes. A. I have.

"Q. In connection with providing for their needs . . . seeing that they were comfortable . . . showing them when to go into the Jury Room et cetera? A. Yes."

Simmons testified in part as follows:

"Q. Dy. Simmons have you been with the Jury during the course of this trial? A. I have been with them, yes sir.

tions, however, upon the ground that there was no showing that either deputy had talked with any member of the jury about the case itself.

"Q. On how many occasions, do you know? A. I can't answer that.

"Q. A number of occasions? A. I have been with them or around them throughout the trial.

"Q. Speaking to them about various and sundry matters? A. Yes sir.

"Q. Have you ever discussed this case with any one of them? A. No sir.

"Q. But you have spoken to them? A. I have talked to them, yes sir.

"Q. Made the acquaintance of some of them? A. I knew most of them.

"Q. But, you have made new acquaintances? A. I would say yes. One or two that I didn't know.

"Q. Do you get along well with the Jury Members? A. I try to get along with everbody [sic].

"Q. There has been no friction in your relationship during these last two days? A. Not as far as I know Sir.

"Q. Have you stayed here any night and watched over the Jury? A. No sir.

"Q. Have you had several meals with the Jury? A. I have had at least two meals with them.

"Q. Sitting at the same table with them? A. That is correct.

"Q. You have ridden in automobiles with them to and from the restaurant? A. I have.

"Q. Dy. Simmons you are the Chief Deputy? A. Chief Criminal Deputy, yes sir.

"Q. As such you have a position superior to the other Deputies on the Staff? In other words, are you considered the boss or the supervisor, or the superior of the other Deputies? A. I make an effort to supervise them, yes sir.

"Q. That is your job? A. That is my job.

"Q. In the conduct of the Jury is it not true that you have been in charge of this? A. Yes sir, I would say so.

"Q. You are the Chief Deputy Sheriff handling the Jury? A. Yes sir. I designate certain Deputies to do certain things with the Jury.

"Q. And some of the things you do yourself? A. That is correct."

The court did not direct Rispone or Simmons to cease associating with the jury, and, so far as the record shows, the association continued for the remainder of the trial. After the jury returned its verdict of guilty, Turner's counsel filed a motion for a new trial upon substantially the same ground as had been urged in support of the earlier motions for a mistrial—that the two principal witnesses for the prosecution "were in actual charge of the jury; that they were physically present with the jurors in and out of the jury room, in automobiles and in eating places with the jury members, mingling with the jurors . . . ." This motion was denied without any further evidentiary hearing, and Turner was sentenced to death by electrocution.

The bill of exceptions filed by the trial court, upon which Turner's appeal to the Supreme Court of Louisiana was based, clearly included a Fourteenth Amendment claim.[7] In affirming the conviction, the State Supreme Court said:

"As we have pointed out, under the jurisprudence of this court unless there is a showing of prejudice, a conviction will not be set aside simply because officers who are witnesses in the case have the jury under their charge. This court is inclined to look upon the practice with disapproval, however, because in such cases there may be prejudice of a kind exceedingly difficult to establish. The practice should be especially condemned where, for instance, the testimony of the officer and that of the accused are in direct conflict and the jury is called upon to weigh the credibility of each, or where the officer is the principal

---

[7] After reciting in detail what had been shown as to Rispone's and Simmons' fraternization with the jurors throughout the trial, the bill of exceptions stated "that the presence of state's witnesses, whether they be deputies or not, is of itself prejudicial to the constitutional rights of Defendant and violative of due process of law."

prosecuting witness." 244 La., at 454; 152 So. 2d, at 557–558.

While thus casting its judgment in terms of state law, the court's affirmance of Turner's conviction necessarily rejected his claim that the conduct of the trial had violated the Fourteenth Amendment.[8] We hold otherwise with respect to the federal constitutional issue, and accordingly reverse the judgment before us.

This case does not involve the question whether the Fourteenth Amendment requires a State to accord a jury trial to a defendant charged with murder.[9] The question, rather, goes to the nature of the jury trial which the Fourteenth Amendment commands when trial by jury is what the State has purported to accord. We had occasion to consider this basic question less than four years ago in *Irvin* v. *Dowd*, 366 U. S. 717. That case did not involve the conduct of the trial itself, for there we found that the conviction could not constitutionally stand because the jury had been infected by prejudice before the actual trial proceedings had commenced. But what the Court said in that case is controlling here:

"In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal

---

[8] The court's opinion did discuss and seemingly rely on a case decided by the United States Court of Appeals for the Tenth Circuit, *Odell* v. *Hudspeth*, 189 F. 2d 300. In that case, an appeal from a federal district court's denial of habeas corpus to a prisoner convicted in a Kansas court, it was held on facts apparently similar to those in the present case that there had been no violation of the Fourteenth Amendment.

[9] It appears that every state constitution provides for trial by jury. See, *e. g.*, Alaska Const., Art. 1, § 11; Idaho Const., Art. 1, § 7; Nevada Const., Art. I, § 3; North Dakota Const., Art. I, § 7; see Columbia University Legislative Drafting Research Fund, Index Digest of State Constitutions, 579 (1959).

standards of due process. *In re Oliver,* 333 U. S. 257; *Tumey* v. *Ohio,* 273 U. S. 510. 'A fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison,* 349 U. S. 133, 136. In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne.' Co. Litt. 155b. His verdict must be based upon the evidence developed at the trial. Cf. *Thompson.* v. *City of Louisville,* 362 U. S. 199. This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. It was so written into our law as early as 1807 by Chief Justice Marshall in 1 Burr's Trial 416 . . . ." 366 U. S., at 722.

The requirement that a jury's verdict "must be based upon the evidence developed at the trial" goes to the fundamental integrity of all that is embraced in the constitutional concept of trial by jury.[10] "The jury is an essential instrumentality—an appendage—of the court, the body ordained to pass upon guilt or innocence. Exercise of calm and informed judgment by its members is essential to proper enforcement of law." *Sinclair* v. *United States,* 279 U. S. 749, 765. Mr. Justice Holmes stated no more than a truism when he observed that "Any judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." *Frank* v. *Mangum,* 237 U. S. 309, at 349 (dissenting opinion).

In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the "evi-

---

[10] The Sixth Amendment provides:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an *impartial* jury of the State and district wherein the crime shall have been committed . . . ." (Emphasis supplied.)

dence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury. It is to be emphasized that the testimony of Vincent Rispone and Hulon Simmons was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. On the contrary, the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether Wayne Turner was to be sent to his death. To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality. Cf. *Rideau* v. *Louisiana,* 373 U. S. 723.

It is true that at the time they testified in open court Rispone and Simmons told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. And even if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial—an association which gave these witnesses an opportunity, as Simmons put it, to renew old friendships and make new acquaintances among the members of the jury.[11]

---

[11] See note 6, *supra.*

474

It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecution witnesses who were *not* deputy sheriffs. But the role that Simmons and Rispone played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial.[12] And Turner's fate depended upon how much confidence the jury placed in these two witnesses.

The judgment is reversed and the case is remanded to the Supreme Court of Louisiana for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE CLARK, dissenting.

It is with regret that I dissent in this case. If I were sitting on the Supreme Court of Louisiana I would vote to reverse it and do everything possible to put a stop to the practice of permitting an officer who testifies in a case also to be in charge of the jury.

However, I cannot say that where no prejudice whatever is shown—as is the case here—the practice reaches federal due process proportions. I understand that it has the approval of the highest courts of a number of other jurisdictions [1] and is recognized by Wharton, American Jurisprudence and Corpus Juris Secundum.[2] Indeed, in

---

[12] See notes 5 and 6, *supra.*

[1] *E. g., Hendrix* v. *State,* 200 Ark. 973, 141 S. W. 2d 852 (1940); *State* v. *Hart,* 226 N. C. 200, 37 S. E. 2d 487 (1946); *Newby* v. *State,* 17 Okla. Cr. R. 291, 188 P. 124 (1920); *Underwood* v. *State,* 118 Tex. Cr. R. 348, 39 S. W. 2d 45 (1931).

[2] 5 Wharton's Criminal Law and Procedure § 2109, at 290, n. 2 (Anderson ed. 1957); 53 Am. Jur., Trial, § 858, at 625; 23A C. J. S., Criminal Law, § 1352, at 946. See also Ann. Cas. 1912 C, at 882; Ann. Cas. 1917 B, at 254.

a similar case from the Tenth Circuit,[3] in which this Court denied certiorari in 1951, the court upheld the conviction on the ground that there was no evidence that a testifying sheriff had acted irregularly in performing as custodian of the jury.

In view of this widespread acceptance of the practice I cannot say that it is violative of the Fourteenth Amendment's Due Process Clause. Cf. my dissent in *Rideau* v. *Louisiana,* 373 U. S. 723 (1963).

---

[3] *Odell* v. *Hudspeth,* 189 F. 2d 300, cert. denied, 342 U. S. 873 (1951).