**Mark T. McDONALD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A04–0203–CR–129.

Court of Appeals of Indiana.

Oct. 3, 2002.

Alan K. Wilson, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Gary Damon Secrest, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SHARPNACK, Judge.

Mark T. McDonald appeals his conviction of forgery, a class C felony.[1] McDonald raises one issue on appeal, which we restate as whether the trial court committed reversible error when it allowed the State to call the trial court's bailiff as a witness at trial.[2] We affirm.

The facts most favorable to the conviction follow. At 1:00 a.m. on August 21, 2000, McDonald arrived at the emergency room at Ball Memorial Hospital in Muncie, Indiana, complaining of an injured ankle. Dr. Max Rudicel examined McDonald and gave him a prescription for Vicodin. Around 3:00 a.m., McDonald took a prescription for extra strength Vicodin ("Vicodin ES") to a Walgreens pharmacy to be filled. The Walgreens pharmacist, Frank Weyl, filled the prescription for Vicodin ES. Later that morning, Weyl noticed that the letters "ES" on McDonald's prescription were written in ink of a different color than the rest of the words on the prescription. Weyl called the hospital and learned that the prescription had been written for Vicodin, not Vicodin ES.

After an investigation by the Delaware County Drug Task Force Unit, the State charged McDonald with forgery, a class C felony, and with obtaining a controlled substance by fraud or deceit, a class D felony.[3]

---

1. Ind.Code § 35–43–5–2(3).

2. In addition, after quoting the language that the trial court used to explain to the jury its decision to permit the Bailiff to testify, McDonald's brief includes the following language:

   Thus, not only did the bailiff provide critical testimony to prove the identify of the person on trial with the person who presented the allegedly forged prescription, but the trial judge reinforced that testimony by tell-

ing the jury what that testimony meant. The trial judge thereby came very close to violating Indiana Evidence Rule 605, which flatly prohibits a judge from testifying in a trial over which he is presiding.

Appellant's Brief at 8. Because McDonald claims the judge "came very close to violating" a rule, not that the judge violated a rule, we do not interpret this language to raise a separate issue or argument on appeal.

3. Ind.Code § 35–48–4–14(c).

The State later dismissed the class D felony charge. The trial court held an initial hearing on February 22, 2001. McDonald appeared for the initial hearing, but did not appear for his trial.

Because McDonald did not appear for his trial, the trial court held McDonald's jury trial in absentia. Because McDonald was absent, Weyl could not identify McDonald in person as the person who delivered the altered prescription. Rather, the State presented a picture ("State's Exhibit 2") to Weyl and asked Weyl whether the picture was of the man who delivered the prescription. Weyl confirmed that the picture was of the man who delivered the prescription. Later, the State called Cathy Bennington ("the Bailiff") in order to ask her whether State's Exhibit 2 was a picture of the man who had appeared at the initial hearing purporting to be McDonald. The Bailiff reported that the picture depicted the man who had attended the initial hearing in McDonald's case. The jury convicted McDonald of forgery as a class C felony. The trial court sentenced McDonald to four years at the Indiana Department of Correction.

The sole issue on appeal is whether the trial court committed reversible error when it allowed the State to call the Bailiff as a witness at trial. McDonald claims that it was improper for the Bailiff to be called as a witness under both *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) and *Ray v. State*, 165 Ind.App. 601, 333 N.E.2d 317 (1975). McDonald cites *Ray* because in that case we noted that "we feel that the practice of permitting a bailiff to appear in the dual roles of witness and bailiff should be abrogated...." *Ray*, 165 Ind.App. at 604, 333 N.E.2d at 319. However, that statement came in the context of holding that Ray was not denied due process because "there is absolutely no showing of prejudice to the defendant resulting from either the testimony or actions of the bailiff." *Id.* Consequently, *Ray* does not compel us to hold that McDonald was denied due process when the trial court allowed the State to call the Bailiff as a witness.

In *Turner*, the defendant was charged with murder committed during the course of a robbery. *Turner*, 379 U.S. at 466, 85 S.Ct. at 546. The two principal witnesses for the prosecution were two deputy sheriffs from the parish where the trial was being held. *Id.* at 467, 85 S.Ct. at 547. During the course of Turner's three-day trial, the jury was sequestered and was kept under the care of the sheriff's department. *Id.* at 467–468, 85 S.Ct. at 547. Deputies from the sheriff's department drove the jurors to a restaurant for each meal, drove the jurors to the hotel each night, ate meals with the jurors, talked to the jurors, and ran errands for the jurors. *Id.* at 468, 85 S.Ct. at 547. Two of the deputies who were "in this close and continual association with the jurors" were the two principal witnesses for the prosecution. *Id.* In holding that Turner was denied due process, the Supreme Court provided the following reasoning:

> It is to be emphasized that the testimony of [the deputies] was not confined to some uncontroverted or merely formal aspect of the case for the prosecution. On the contrary, the credibility which the jury attached to the testimony of these two key witnesses must inevitably have determined whether Wayne Turner was to be sent to his death. To be sure, their credibility was assailed by Turner's counsel through cross-examination in open court. But the potentialities of what went on outside the courtroom during the three days of the trial may well have made these courtroom proceedings little more than a hollow formality.

\* \* \* \* \*

[E]ven if it could be assumed that the deputies never did discuss the case directly with any members of the jury, it would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution. We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial an association which gave these witnesses an opportunity, as [one deputy] put it, to renew old friendships and make new acquaintances among the members of the jury.

It would have undermined the basic guarantees of trial by jury to permit this kind of an association between the jurors and two key prosecution witnesses who were not deputy sheriffs. But the role that [the deputies] played as deputies made the association even more prejudicial. For the relationship was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial. And Turner's fate depended upon how much confidence the jury placed in these two witnesses.

*Id.* at 473–474, 85 S.Ct. at 550 (footnotes omitted).

While we acknowledge the appropriateness of the decision in *Turner*, we do not believe that McDonald's circumstances rise to the level of *Turner*. Here, the jury was not sequestered during the two-day trial, which means that the Bailiff and jurors would not have had the degree of contact that the deputies and jurors had in *Turner*. In addition, here, unlike *Turner*, the Bailiff's testimony was confined to a more formal aspect of the case. The Bailiff was not testifying about whether the defendant committed some elements of the crime; rather, she was testifying about whether a picture depicted the man who attended the initial hearing for this cause and claimed to be the defendant. Moreover, the Bailiff was not the only witness who testified that State's Exhibit 2 was a picture of a Mark T. McDonald who had the same date of birth and social security number as the defendant in this cause. Roberta Terranova identified State's Exhibit 2 as a photo of Mark Thomas McDonald and testified to his date of birth, social security number, and address. In addition, David Williams testified that State's Exhibit 2 was a picture of a man that he had known for a year as Mark McDonald. Given that the Bailiff's testimony was cumulative of other evidence properly presented by the State and that the Bailiff was not the key witness who identified McDonald as the person who committed the crime, McDonald's right to due process was not violated when the trial court permitted the Bailiff to testify.

For the foregoing reasons, we affirm McDonald's conviction.

Affirmed.

FRIEDLANDER, J., and NAJAM, J. concur.