**Adelmo Sais BELTRAN, Petitioner–Appellant,**

v.

**Mike KNOWLES, Warden, Respondent–Appellee.**

No. 03–15863.

D.C. CV–01–04964–MHP.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 15, 2004.

Decided Jan. 13, 2005.

Marc J. Zilversmit, San Francisco, CA, for Petitioner–Appellant.

Adelmo Sais Beltran, Calipatria, CA, Gregory A. Ott, Office of the California Attorney General, San Francisco, CA, for Respondent–Appellee.

Before OAKES,* KLEINFELD, and CALLAHAN, Circuit Judges.

MEMORANDUM**

Adelmo Sais Beltran appeals from the January 21, 2003, order of the United States District Court for the Northern District of California, Hon. Marilyn Hall Patel, denying his *pro se* application for habeas relief pursuant to 28 U.S.C. § 2254. The district court certified for appeal appellant's claim that the jury was exposed to extrinsic evidence in violation of his Sixth Amendment rights.

We reverse the denial of the petition and remand with instructions that Beltran either be released or granted a new trial.

At trial in Superior Court, the prosecution proved that Beltran's two co-defendants drove from San Francisco to Beltran's home in Los Angeles County, where they and Beltran loaded ten kilograms of cocaine into a car door. The two co-defendants then drove back to San Francisco. There was no direct evidence that the defendants knew the packages contained cocaine, but the prosecution argued that, under the circumstances, it should have been obvious. The defense argued, and one defendant testified, that the defendants thought they were handling an illegal black powder used in making fireworks.

During deliberations, the jury read aloud a government agent's affidavit attached to a search warrant for Beltran's co-defendant's home. The affidavit had been ruled inadmissible but, for reasons unexplored at the state level, it was mistakenly attached to the search warrant cover page admitted at trial. When a note from the jury brought the error to the court's attention, jurors were instructed not to consider the evidence. When polled, each answered they could forget the evidence. The court also determined that one juror had read the government affidavit and return attached to the search warrant for Beltran's home, which had also been excluded from evidence, and which

---

* Hon. James L. Oakes, Senior Circuit Judge of the U.S. Court of Appeals for the Second Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

listed a weapon and ammunition as among the goods seized. That juror, upon being further instructed, answered that he could ignore the evidence. The affidavit for the first warrant completely undermined the defense because it contained a confidential informant's hearsay statements that one of Beltran's co-defendants was a cocaine trafficker who made weekly trips to Los Angeles to purchase cocaine.

Under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) (2000), an applicant for habeas relief must demonstrate that the state courts' adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented."

We hold that the jurors' exposure during deliberations to the excluded evidence contained in the government affidavits was constitutional error depriving Beltran of his Sixth Amendment rights to confrontation, cross-examination and assistance of counsel. Contrary to United States Supreme Court precedent, the state trial court, the California Court of Appeal, and the California Supreme Court each failed to find that this amounted to federal constitutional error. *See Turner v. Louisiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) ("In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."); *Parker v. Gladden*, 385 U.S. 363, 364, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966); *Marshall v. United States*, 360

U.S. 310, 312–13, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959).

We cannot defer to the state court's prejudice determination because it placed the burden on Beltran to demonstrate prejudice from the error, contrary to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *Chapman* requires that the burden of demonstrating the absence of prejudice from constitutional error rest with the state. *See* 386 U.S. at 24 ("constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless").

On collateral review, we must determine whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The *Brecht* standard is derived from the Court's decision in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in which the Court explained:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 765; *see Brecht*, 507 U.S. at 637–38 (explicitly adopting *Kotteakos* standard).

We hold that, of the two excluded affidavits erroneously considered by the jury, the first affidavit attached to the search

warrant for Beltran's co-defendant's home leaves us in grave doubt that the error did not have a substantial and injurious effect on the jury's verdict. The affidavit had been ruled too prejudicial to be admissible at trial—it bore the government's imprimatur, it described prior identical criminal activity of one of the defendants and was incriminating as to all defendants, seriously undermining the defense. We find that a jury instruction to ignore the affidavit could not cure its prejudicial impact. It is extremely unlikely that the jury, even if instructed to do so, could be expected to set such highly prejudicial evidence aside. The fact that the jurors had the affidavit read out loud during their deliberations is inconsistent with the proposition that it was not of great significance to them. The instruction was inadequate here because Beltran was deprived of the opportunity to rebut the evidence, to discuss its significance in argument to the jury, or to take other steps to lessen its prejudicial impact.

"[W]e are dealing here with a trial error of constitutional dimension—of the sort that seriously risks an unreliable trial," and we are in grave doubt as to the harmlessness of the error, and therefore, relief must be granted. *O'Neal v. McAninch*, 513 U.S. 432, 442, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) ("when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief"); *see also Belmontes v. Woodford*, 350 F.3d 861, 905–06 (9th Cir.2003) (noting that under *O'Neal* inquiry, "the state bears the 'risk of doubt' ").

REVERSED and REMANDED.

CALLAHAN, Circuit Judge, dissenting.

I respectfully dissent.

This case deals with ordinary error that was cured by timely instruction to the jury. Under California law, a jury's inadvertent receipt of information from the court is ordinary error, not constitutional error. *See People v. Rose*, 46 Cal.App.4th 257, 264, 53 Cal.Rptr.2d 559 (1996). The majority concludes the jury's accidental receipt of information from the court in this case was constitutional error, which thereby raises a presumption of prejudice, citing *Turner v. Lousiana*, 379 U.S. 466, 472–73, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). *Turner*, and the other cases on which Beltran relies, do not apply to the facts of this case. Instead, they concern impermissible communication between jurors and witnesses or interested parties and/or exposure to evidence entirely extraneous to the trial. A presumption of prejudice attaches where jurors obtain information extraneous to the trial. *People v. Cooper*, 53 Cal.3d 771, 836, 281 Cal.Rptr. 90, 809 P.2d 865 (1991). There is no Supreme Court precedent, however, establishing that the presumption attaches when a jury innocently considers evidence mistakenly provided by the court itself.

Ordinary error does not raise a presumption of prejudice, and is reversible only of it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error. *People v. Clair*, 2 Cal.4th 629, 668, 7 Cal.Rptr.2d 564, 828 P.2d 705 (1992), *cert. denied*, 506 U.S. 1063, 113 S.Ct. 1006, 122 L.Ed.2d 155 (1993). Here, Mr. Beltran's defense was weak, and his primary witness (his common-law wife) was impeached. Indeed, there was ample indicia of a sophisticated drug operation for which Mr. Beltran apparently had no innocent explanation.

Surveillance officers observed Beltran emerging from his own home carrying several kilo-sized packages and placing them inside the dismantled door panels of co-defendant Ramon Beltran's ("Ramon") car shortly after Ramon arrived in Los Angeles from San Francisco. Ramon is Bel-

tran's cousin. Beltran appeared to act as a lookout, peering up and down the street as Ramon and his co-defendant passenger loaded more packages. Ramon and his passenger left for San Francisco at approximately 9:00 p.m., within forty minutes of their arrival in Los Angeles.

The arresting officers testified that Ramon's car was heavily scented with at least five air fresheners. They believed the scent was intended to mask the odor of drying cocaine, which emits a strong bleach smell. Officers seized ten kilo-sized packages of 98% pure cocaine salt from the car. The cocaine was estimated to be worth one to two million dollars at street value.

When officers arrived at Beltran's home the following day, Beltran appeared to have been engaged in heavy physical labor. His tools were spread on the ground and he had cement on his hands. Officers noticed a recently-poured cemented hole, which they opened. The hole was approximately three to four feet deep. The concrete had been poured over a level of plywood, which in turn, kept the hole dry. Officers testified that the hole was of the sort frequently used to hide contraband. When searched, however, this one was empty.

Officers seized Beltran's pager from his person, his cell phone, and $4,000 cash hidden underneath a television in the master bedroom closet. The cash was in $100s, $50s and $20s. Beltran's common-law wife of ten years signed an affidavit claiming that the cash was rental receipts, which included $900 from property in Compton and $900 from property in Long Beach. At trial, however, she testified that she was not sure who owned the Long Beach property. She claimed that Beltran made $1600 per month and that she made $840. Their monthly mortgage was $1,146, and they supported three children

as well. Beltran's wife produced receipts to verify the rental monies; however, on cross examination she was forced to acknowledge that she had predated and affixed Beltran's name to them.

Beltran produced only two witnesses who testified that they rented property from him. They claimed they always paid rent in cash ($250 and $650 per month, respectively). One of the witnesses testified that he had fallen behind in rent, and that he had paid Beltran $1,240 in cash (all in $20s) shortly before Beltran was arrested. He also stated that he noticed what appeared to be a nasty "sink hole" developing on Beltran's property, and that no one would store anything of value in the hole.

This is the extent of the "lack of scienter" evidence offered by Beltran, who did not testify on his own behalf. Notably, the information inadvertently given to the jury implicated Ramon, not Beltran. The affidavit referenced the comments of a confidential police informant, who stated that Ramon was a drug dealer and that he made weekly trips to Los Angeles to pick up ten-kilo shipments of cocaine to sell in the Bay Area. Beltran's name and address were never mentioned; therefore, his "lack of scienter" defense remained viable despite the jury's accidental receipt of this information.

It is not reasonably probable that Beltran would have achieved a more favorable result if the jury had not inadvertently received the evidence at issue. Moreover, the Supreme Court has made clear that jury instructions may cure errors of a jury's exposure to accidentally submitted evidence. *See Richardson v. Marsh*, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). In this case, the jury voluntarily brought the evidence in question to the court's attention and asked for guidance. The trial court not only instructed

jurors to disregard the evidence, but also polled them to determine whether they could, in fact, disregard the evidence.

Notwithstanding, assuming *arguendo* that the error in this case was constitutional error, it can be said with fair assurance that Beltran would have been convicted even if the jury had never received the information at issue, given the significant indicia of drug trafficking activity at Beltran's home and the weakness of his defense. Thus, the *Brecht* test has been met in any event.

I would affirm the denial of Beltran's habeas corpus petition.