NOONAN, Circuit Judge,
dissenting:
Reversing a conviction of murder that had been affirmed by the Supreme Court of Louisiana, Justice Stewart writing for eight of the nine justices, stated:
The question [before the Court] goes to the nature of the jury trial which the Fourteenth Amendment commands when trial by jury is what the State has purported to accord.
Turner v. Louisiana, 379 U.S. 466, 471, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).
Justice Stewart turned to an earlier case involving jury misconduct and stated: “What the Court said in that case is controlling here[.]” Id. Justice Stewart went on to repeat the earlier case’s statement that “[a juror’s] verdict must be based upon the evidence developed at the trial.” Id. at 472, 85 S.Ct. 546 (quoting Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).
Justice Stewart continued:
The requirement that a jury’s verdict “must be based upon the evidence devel *1080 oped at the trial” goes to the fundamental integrity of all that is embraced in the constitutional concept of trial .by jury....
In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the “evidence developed” against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant’s right of confrontation, of cross-examination, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury.
Turner, 379 U.S. at 472-73, 85 S.Ct. 546.
Contamination of the jury by a particular source or to a particular degree is not the focus of the Supreme Court. Justice Stewart states the evidence before the jury must come from the witness stand in a public courtroom. No room is left for a dribble of relevant information snatched from the corridors of the court by undisciplined jurors.
At issue in our case was the credibility of Fue Xiong, the younger brother of the defendant. Fue had given a videotaped statement to the police identifying the defendant as the shooter. At the time of this statement, Fue was fifteen years old.
At his brother’s trial six years later, Fue was treated as a hostile witness by the prosecution. He denied that his brother had confessed. Fue testified that he had memory problems arising from occasions where he had been knocked out. He testified that his memory deteriorated and he became confused when stressed. A key question for the jury was whether it should believe Fue on the videotape or on the witness stand.
Several members of the jury made observations relevant to the credibility of Fue. This evidence did not come from the witness stand. It came from the corridors of the court.
Juror Nine observed Fue in a hallway speaking on his cell phone several times over the two days during which he was a witness at the trial. Fue did not appear to be confused to Juror Nine. Fue “had his act together.” Juror Nine stated that Fue’s out-of-court demeanor was discussed by the jury during its deliberation. At a subsequent hearing, Juror Nine repudiated his statement that he could hear what Fue said on the cell phone. He did not deny that he observed Fue. Juror Nine now declared that any reference in the jury room to observation of Fue on the cell phone came after the jury had decided that Fue’s testimony was not credible.
Juror Ten and Juror Five also reported that they had observed Fue in out-of-court cell phone conversation.
On the basis of the three jurors’ declarations, the defense moved for a new trial. After a hearing, the trial court stated: “Now, the misconduct in this case that I find is that the jurors discussed those phone conversations in the jury deliberation room.” There was a presumption of prejudice. The prosecution had the burden of rebutting it.
The trial court went on to determine whether the prosecution had met its burden. The court first ruled that “the extraneous information was not so prejudicial in and of itself as to cause inherent bias.”
The trial court then reviewed inconsistencies in Fue’s courtroom testimony. In contrast, the trial court stated, “In that videotaped statement he was clear on all the essential details.” The trial court then ruled that looking at the totality of the evidence there was no substantial likelihood of actual bias relative to any of the jurors.”
*1081 On direct appeal, the California Court of Appeal for the Third Appellate District held:
Our review of the record, here, leads us to concur with the trial court’s determination that defendant suffered no prejudice from the misconduct in question, either objectively or based on actual juror bias.
We agree with the trial court that, objectively, the extraneous information was not likely to have influenced the jury. We accept the trial court’s observation that Fue was not a credible witness and that his memory lapses while testifying were “comical,” as the transcript of Fue’s testimony supports the trial court’s assessment. The court contrasted Fue’s demeanor in court with his videotaped interview, in which Fue was “clear on all the essential details.” Although the videotaped interview is not before this court, [footnote omitted] the transcript of that interview confirms that Fue had no difficulty with recall, in marked contrast to his responses to questions at trial. Thus, observations of Fue outside the courtroom during trial were merely cumulative of what the jury witnessed on the videotaped interview and were unlikely to have influenced the jury.
People v. Xiong, No. C048798, 2006 WL 3033192, at *14 (Cal.Ct.App. Oct. 26, 2006).
Our review is of the opinion of the California Court of Appeal, the last reasoned judgment of the state courts.
The California appellate court confirmed what the trial court had found: Xiong’s jury had before it “extraneous information” not presented to the jury in the trial. Following the trial court, the California Court of Appeal held that “objectively” the extraneous information was “not likely to have influenced the jury.” Id. The California Court of Appeal went on to find Fue not to be a credible witness.
The majority deprive Turner of its force by citing Remmer, a decision of the Supreme Court predating Turner and stating in dicta that the presumption of jury misconduct is rebuttable. See maj. op. at 1076-77. The majority’s use of precedent turns the dicta and decisions of the Supreme Court upside down. The earlier dicta in a case, moving towards the ultimate prohibition of outside influence, are now turned into a gloss on the definitive resolution of the issue. It’s an odd way to read controlling authority.
Nothing in Turner gives approval to a court determining that information received by the jury outside the trial is permissible if the information is not too prejudicial. Nothing in Turner indicates that the jury’s verdict may be upheld by the trial judge or the appellate court deciding the credibility of the witness as to whom the jury had information not obtained at the trial. To permit a state appellate court to validate a trial in this informal and intrusive way is to impair the integrity of the jury trial.
The state asserts that defendant’s claim is barred “because there is no Supreme Court authority addressing whether and when the jury’s discussion of a juror’s observations outside the courtroom violates a defendant’s right to due process or any other constitutional right.” Inconsistently, the state moves on to address Turner and quotes from its holding that the jury’s verdict “must be based on the evidence developed at the trial.” The state does not deal with this requirement but seeks to distinguish Turner, saying Turner addressed external contact made with the jury, not the misconduct of the jurors themselves. Therefore, the state argues, Turner does not “squarely” face the issue in this case. But it is the state that does not squarely face Turner.
*1082 Turner holds that a jury must decide a case on the evidence presented to the jury in the courtroom. Any other source of information is excluded by what a jury trial demands. The observations of Fue and the discussion of those observations by the jury destroyed its ability to act as a jury. Contaminated, “the nature” of a trial by jury disappeared beyond retrieval, repair, or excuse. Under binding federal constitutional law as determined by the United States Supreme Court Xiong is entitled to a new trial before uncontaminated jurors.
The opinion of the court in our case cites four cases in which the United States Supreme Court found jury misconduct requiring a new trial. The opinion distinguishes these cases by saying that each involved outside influences on the jury. That difference is correct. It is not a difference that the Supreme Court drew. It is a distinction defying the holding of Turner as to what constitutes the integrity of the jury.
The opinion of the court in our case copies the error of the California Court of Appeal in weighing the effect of the contamination and finding the juror misconduct harmless. That jurors themselves made out-of-court observations and discussed these observations with their fellow jurors was at least as corrosive of the process as the comments of a bailiff or a guard to ensure the integrity of the jury’s deliberations. Turner drew a clear and bright line. California crossed it.